# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEEON ANTONIO FRASIER,

          Petitioner,

    v.

WARDEN SCI COAL TOWNSHIP,

          Respondent.

No. 4:22-CV-01116

(Chief Judge Brann)

## MEMORANDUM OPINION

### MARCH 14, 2024

Petitioner Leeon Antonio Frasier initiated this action by filing a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Frasier, however, failed to raise his claims in state court and can no longer do so, so they are procedurally defaulted.  Because Frasier cannot establish cause and prejudice to excuse his default, the Court must dismiss his Section 2254 petition.

## I.    BACKGROUND AND PROCEDURAL HISTORY

In April 2019, Frasier was convicted—following a bench trial—of aggravated assault, strangulation, and theft by unlawful taking.[1]  These convictions stem from Frasier's June 29,[2] 2018 physical assault of his romantic partner Jessica

---

[1]   *See Commonwealth v. Frasier*, No. 1453 MDA 2019, 2020 WL 1490937, at *1 (Pa. Super. Ct. Mar. 27, 2020) (nonprecedential).

[2]   The Court observes that although the Pennsylvania Superior Court identifies the date of the incident as June 19, 2018, *see id.* (citing "N.T. Trial, 4/22/19, at 9-10"), both the trial testimony and Frasier's publicly available criminal docket establish that the events occurred on June 29,

Oren, with whom he was having a "long-term extra marital relationship."[3]  The

June 29 assault occurred outside of a hotel in Harrisburg, Pennsylvania.[4]  Frasier

did not dispute that he assaulted Oren, but he maintained that he was not guilty of

the more serious charges alleged.[5]

At trial, Oren was a "resistant" witness, asserting that she did not want to

press charges against Frasier or testify against him and claiming that she could not

remember many of the events that had transpired ten months earlier.[6]  The trial

court observed in its written opinion that "evidence suggested that Oren was

terrified of retaliation by Frasier."[7]  Oren, however, had given a recorded statement

to police on July 12, 2018, less than two weeks after the incident, and that audio

recording was admitted as evidence at Frasier's bench trial.[8]  After finding Frasier

guilty, the court sentenced him to 54 to 108 months for aggravated assault, 54 to

108 months for strangulation (to run concurrently with the aggravated assault

sentence), and 12 to 24 months on the theft conviction (also to run concurrently

with the aggravated assault sentence).[9]

---

2018.  *See* Doc. 29-6, Apr. 22, 2019 Trial Tr. 9:24-10:4 [hereinafter "Trial Tr. __:__"]; Doc.
29-1 at 2 (*Commonwealth v. Frasier*, CP-22-CR-0005489-2018 (Ct. Com. Pl. Dauphin Cnty.)).
[3]    *Id.*
[4]    *See id.*
[5]    *See id.*, at *2.
[6]    *See id.*, at *1.
[7]    *See id.*, at *2.
[8]    *See id.*, at *1, 2, 4.
[9]    *See id.*, at *2.

Frasier appealed, challenging the sufficiency of the evidence as to all three convictions.[10]  The Superior Court of Pennsylvania affirmed the judgment of sentence for the aggravated assault and strangulation convictions, but reversed and vacated the theft conviction.[11]  The panel further determined that remand for resentencing was unnecessary because the 12- to 24-month sentence for theft was imposed to run concurrently with the aggravated assault sentence, so vacating the judgment of sentence for the theft charge "d[id] not affect the overall sentencing scheme."[12]  The Supreme Court of Pennsylvania denied Frasier's petition for allowance of appeal on August 19, 2020.[13]

Frasier then filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act (PCRA).[14]  PCRA counsel was appointed but subsequently moved to withdraw by filing a *Turner*/*Finley*[15] "no merit" letter.[16]  The PCRA court granted counsel's motion to withdraw and ultimately denied Frasier's PCRA petition.[17]

Frasier appealed *pro se*, raising three arguments sounding in PCRA court error: (1) the PCRA court erred when it failed to consider Frasier's claim that trial

---

[10]  *See id.*

[11]  *See id.*, at *2-5.

[12]  *Id.*, at *5 (citing *Commonwealth v. Lomax*, 8 A.3d 1264, 1268-69 (Pa. Super. Ct. 2010)).

[13]  *Commonwealth v. Frasier*, 237 A.3d 984, No. 215 MAL 2020 (Pa. Aug. 19, 2020) (table) (per curiam).

[14]  42 PA. CONS. STAT. § 9541 *et seq.*

[15]  *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (*en banc*).

[16]  *See Commonwealth v. Frasier*, No. 885 MDA 2021, 2022 WL 367358, at *2 (Pa. Super. Ct. Feb. 8, 2022) (nonprecedential).

[17]  *See id.*

counsel was ineffective for failing to request the trial court's recusal; (2) the PCRA court erred when it failed to consider Frasier's claim that the trial court abused its discretion by not recusing itself due to a conflict of interest; and (3) the PCRA court erred when it failed to consider Frasier's claim that his due process rights were violated when trial counsel failed to file a pretrial motion to obtain information regarding the victim's drug abuse and mental health.[18]

The Superior Court construed Frasier's appeal as raising two claims of ineffective assistance of counsel—one involving failure to seek the trial judge's recusal and another concerning failure to obtain records of the victim's purported prior drug abuse and mental health issues.[19]  The panel rejected both claims on the merits and affirmed the PCRA court's dismissal of his petition.[20]  It does not appear that Frasier filed a petition for allowance of appeal with the Pennsylvania Supreme Court.

Frasier timely filed his Section 2254 petition in this Court in June 2022.[21] He also included an excessively lengthy 101-page memorandum of law.[22]   The Commonwealth filed a cursory response that spanned only five pages and included just two arguments: *first*, that Frasier procedurally defaulted his first three claims;

---

[18]   *See id.*, at *3.
[19]   *See id.*, at *4-6.
[20]   *See id.*
[21]   *See generally* Doc. 1.
[22]   *See generally* Doc. 2.

and *second*, that the state courts did not make an unreasonable determination as to Frasier's fourth claim regarding ineffective assistance of counsel.[23]

The Court reviewed the parties' submissions and found them both to be problematic.[24]  Frasier's "sprawling, 101-page" memorandum of law was far longer than permitted by the Local Rules of Court and Frasier had not sought prior leave of Court to file such a lengthy brief.[25]  The overlong brief also asserted different claims than those raised in his Section 2254 petition, causing confusion for both Respondent and the Court.[26]  Respondent's response, for its part, was conclusory and insufficient, failing to even consider Frasier's arguments regarding excusal of procedural default.[27]  It also did not address the additional claims raised in Frasier's overlong brief.  Accordingly, the Court ordered the parties to "try again."[28]

Frasier filed his "revised memorandum of law" in support of his Section 2254 petition (hereinafter "supplemental memorandum"), raising seven claims for relief.[29]  Respondent filed a supplemental answer,[30] and Frasier filed a traverse.[31] Frasier's habeas petition, therefore, is ripe for disposition.

---

[23]  *See generally* Doc. 18.
[24]  *See* Doc. 24.
[25]  *See id.* at 2.
[26]  *See id.*
[27]  *See id.*
[28]  *See id.* at 3.
[29]  *See generally* Doc. 25.
[30]  Doc. 29.
[31]  Doc. 35.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[32] mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief.[33]  An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits.[34]

If a state prisoner has not fairly presented a claim to the state courts "but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play."[35]  Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns.[36]

A few limited exceptions to this rule exist.  One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."[37]  "Cause for a procedural

---

[32]   28 U.S.C. §§ 2241-2254.

[33]   *Id.* § 2254(b)(1)(A).

[34]   *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *see also Johnson v. Williams*, 568 U.S. 289, 302 (2013).

[35]   *Carpenter*, 296 F.3d at 146 (citations omitted).

[36]   *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)).

[37]   *Id.* at 10 (citing *Coleman*, 501 U.S. at 750).

default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."[38]  To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[39]  If cause and prejudice are established, the federal court reviews the claim *de novo* "because the state court did not consider the claim on the merits."[40]

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'"[41]  To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence.[42]

Finally, as pertinent to the instant petition, the Supreme Court of the United States carved out a "narrow exception" to procedural default in *Martinez v. Ryan*, 566 U.S. 1 (2010).  Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's

---

[38]  *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted).

[39]  *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[40]  *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017), *cert. denied sub nom. Gilmore v. Bey*, 138 S. Ct. 740 (2018) (mem.) (citation omitted).

[41]  *Carpenter*, 296 F.3d at 146 (quoting *Coleman*, 501 U.S. at 750).

[42]  *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

procedural default of a claim of ineffective assistance at trial."[43]  *Martinez* also recognizes that a finding of cause and prejudice to excuse procedural default "does not entitle the prisoner to habeas relief.  It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted."[44]

To successfully invoke the *Martinez* exception, a petitioner must satisfy two requirements: (1) the petitioner's underlying, otherwise defaulted claim of ineffective assistance of trial counsel must be "substantial," meaning that it has "some merit"; and (2) the petitioner had "no counsel" or "ineffective" counsel during the initial phase of state collateral review.[45]  Whether a claim is "substantial" under *Martinez* is "analogous to the substantiality requirement for a certificate of appealability."[46]  "Thus, the question for *Martinez* purposes[] is merely whether 'reasonable jurists could debate' that [a petitioner's ineffective-assistance-of-trial-counsel] claim has merit, or whether the claim is 'adequate to deserve encouragement to proceed further.'"[47]

But a substantial underlying claim alone is not sufficient to excuse a petitioner's procedural default.[48]  The petitioner must also demonstrate that post-

---

43  *Martinez*, 566 U.S. at 9.

44  *Id.* at 17.

45  *Id.* at 14; *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019).

46  *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (citing *Martinez*, 566 U.S. at 14).

47  *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000))).

48  *See Workman*, 915 F.3d at 938.

conviction counsel's ineffectiveness caused the default by establishing that post-conviction counsel's performance in initial-review collateral proceedings was deficient under the first prong of the *Strickland v. Washington* standard.[49]  That initial prong requires a petitioner to show that counsel's representation fell below an objective level of reasonableness based on prevailing professional norms.[50]  In determining whether counsel has satisfied the objective standard of reasonableness, courts must be highly deferential toward counsel's conduct.[51]  There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.[52]  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."[53]

## III.   DISCUSSION

Frasier appears to concede that he procedurally defaulted all the grounds for relief he raises in his Section 2254 petition.[54]  Frasier's original petition, initial memorandum of law, and supplemental memorandum assert seven claims of ineffective assistance of trial counsel and one claim of cumulative prejudice and

---

[49]   *See id.* at 937-38 (referencing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also Preston*, 902 F.3d at 376.

[50]   *Strickland*, 466 U.S. at 687-88.

[51]   *Id.* at 689.

[52]   *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).

[53]   *Id.* at 711 (citing *Strickland*, 466 U.S. at 689-90).

[54]   *See* Doc. 2 at 12-13; Doc. 25 at 6, 31-33.  The Court cites to the CM/ECF electronic pagination rather than the page numbers provided by the parties.

contend that he can excuse his procedural default of these claims under the *Martinez v. Ryan* exception.[55]  The Court disagrees, and will discuss each of Frasier's defaulted claims in turn.

### A.  Failure to Move to Suppress Recorded Statement

In his first and most prominent claim, Frasier contends that his trial counsel was ineffective for failing to move *in limine* to suppress Oren's July 12, 2018 audio statement that was recorded two weeks after the incident and admitted at trial.  Frasier expends an extensive amount of effort attacking all manner of collateral issues regarding Oren's recorded statement but very little time providing any legal basis for why the statement should have been suppressed or was inadmissible.  For example, Frasier argues that the statement (when reduced to writing) was not signed or verified by Oren,[56] was inaccurate,[57] was improperly influenced or coerced by the police detective taking the statement,[58] and was the possible product of an undisclosed deal with the prosecution.[59]  While Frasier proffers a great deal of speculation about why Oren's prior statement did not match

---

[55]  *See* Doc. 2 at 12-14; Doc. 25 at 6-7, 31, 33.  Although Frasier sets forth six claims at the opening of his supplemental memorandum, (*see* Doc. 25 at 6-7), it actually contains seven claims.  Moreover, his initial memorandum of law asserts eight total claims.  The Court will address all eight claims for relief.

[56]  Doc. 25 at 8, 18.

[57]  *Id.* at 8-9.

[58]  *Id.* at 9-11, 13-14, 15, 17.

[59]  *Id.* at 12-13.  To the extent that Frasier may be attempting to assert a claim regarding failure to disclose impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), any such claim is procedurally defaulted and Frasier has not alleged, let alone established, cause or prejudice to excuse that default.

her trial testimony or was unreliable, none of this speculation is supported with facts or evidence.

Consequently, the primary problem with Frasier's arguments is that none of them identify a legal basis for pretrial suppression of Oren's recorded statement or its inadmissibility at trial. Initially, there would have been no basis to move *in limine* to suppress the statement before trial because Oren was going to testify at trial and was the key witness for the prosecution. The admissibility of Oren's prior recorded statement was thus contingent on her trial testimony and could not be categorically excluded (or admitted, for that matter) pretrial.

When Oren's trial testimony dramatically changed from her prior recorded statement, however, that recorded statement became admissible as both impeachment[60] and substantive evidence. Pennsylvania Rule of Evidence 803.1 provides that, for a prior inconsistent statement of a declarant-witness, "a verbatim contemporaneous electronic recording of an oral statement" is "not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement."[61] It also provides that, for "a declarant-witness who testifies to an inability to remember the subject matter of the statement" in a manner that the court finds lacking credibility, "a verbatim contemporaneous electronic recording of an oral statement" is "not excluded by the rule against

---

[60]   *See* PA. R. EVID. 613(a).
[61]   PA. R. EVID. 803.1(1)(C).

hearsay if the declarant testifies and is subject to cross-examination about the prior statement."[62]

Thus, inasmuch as Frasier argues that Oren's trial testimony materially differed from her recorded statement or indicated that she could not remember that statement—points that Frasier repeatedly and strenuously asserts throughout his petition—that recorded statement is plainly admissible pursuant to Rules 803.1(1)(C) and 803.1(4)(C) as substantive evidence, not just impeachment evidence.[63] Rule 803.1 likewise undercuts Frasier's argument that the written version of the statement needed to be "signed" or "otherwise verified,"[64] because no such signature or verification is required for a verbatim contemporaneous electronic recording of an oral statement.[65]

Frasier himself identifies binding Pennsylvania authority indicating that the recorded statement could be used as substantive evidence in his trial.[66] Oren did not refuse to testify or to answer questions at trial, a fact which Frasier admits,[67] so his circumstances are materially different from those in which Pennsylvania courts have found a Confrontation-Clause issue with admission of a prior inconsistent

---

[62] PA. R. EVID. 803.1(4)(C).

[63] *See* PA. R. EVID. 803.1(1), Comment (citing *Commonwealth v. Brady* 507 A.2d 66 (Pa. 1986); *Commonwealth v. Lively*, 610 A.2d 7 (Pa. 1992)).

[64] Doc. 25 at 8, 17, 18, 32.

[65] *See* PA. R. EVID. 803.1(1)(C), (4)(C).

[66] *See* Doc. 25 at 7-8 (citing *Commonwealth v. Carmody*, 799 A.2d 143, 148 (Pa. Super. Ct. 2002)).

[67] *See id.* at 11.

statement.[68]  Finally, none of Frasier's speculative arguments establish that Oren's

prior statement, which was given less than *two weeks* after the assault and was

made to police outside of Frasier's intimidating presence,[69] was unreliable or

coerced.

Frasier has not demonstrated how Oren's recorded statement could have

been suppressed before trial or was somehow inadmissible at trial.  Hence, he has

not shown that his trial counsel's performance was deficient or that he was

prejudiced by that performance.  Frasier has therefore failed to establish that his

underlying ineffective-assistance-of-trial-counsel claim has "some merit."  He

additionally fails to establish that initial-review PCRA counsel was ineffective for

failing to raise this claim, as counsel cannot be deemed ineffective for failing to

assert a meritless claim.[70]  The *Martinez* exception does not apply to this claim and

thus it is procedurally defaulted and unreviewable.

### B.    Failure to Properly Defend Against Aggravated Assault Charge

In Frasier's second claim, he alleges that his trial attorney failed to properly

defend against the aggravated assault charge.  Although Frasier also attempts to

---

[68]  *See Carmody*, 799 A.2d at 148 n.3 (distinguishing *Commonwealth v. Romero*, 722 A.2d 1014, 1017 (Pa. 1999)).

[69]  *See* Trial Tr. 60:2-8 ("What [Oren] had indicated to [the investigating detective] was she was extremely scared of Mr. Frasier, that he has people as she put it and she felt that testifying against him could be dangerous for her and . . . she was legitimately scared of him."); *see also Frasier*, 2020 WL 1490937, at *2, 3 (noting that trial court found that "Oren was terrified of retaliation by Frasier").

[70]  *Preston*, 902 F.3d at 379.

assert that his counsel on direct appeal was constitutionally ineffective for similar reasons,[71] the Supreme Court of the United States has explicitly held that the *Martinez* exception only applies to defaulted claims of trial counsel ineffectiveness and does not extend to defaulted claims of ineffective assistance of appellate counsel.[72]

Frasier was convicted of aggravated assault pursuant to 18 PA. CONS. STAT. § 2702(a)(1), which provides that a person is guilty of that offense if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"[73]  As noted by the Pennsylvania Superior Court, the Commonwealth conceded at trial that Oren did not sustain "serious bodily injury,"[74] so his conviction fell under the "attempt" portion of this statute.[75]

The thrust of Frasier's claim is that trial counsel should have obtained and reviewed hotel video surveillance footage of the incident, which Frasier baldly contends would have corroborated his version of events.  This contention, however, is based on nothing more than self-serving speculation about what the surveillance cameras recorded and would have shown.  Frasier has not provided

---

[71]   *See* Doc. 25 at 22-23, 25.
[72]   *Davila v. Davis*, 582 U.S. 521, 524-25 (2017).
[73]   18 PA. CONS. STAT. § 2702(a)(1).
[74]   *See Frasier*, 2020 WL 1490937, at *3 & n.3 (citations omitted).
[75]   *See id.* (discussing requirements for attempted aggravated assault under Section 2702(a)(1)).

any evidence or factual support that the hotel's surveillance cameras captured the assault, much less that the footage depicted what Frasier claims it would.  Frasier merely points to trial testimony from the investigating detective, in which Frasier's attorney questioned the detective about the possible existence of hotel video surveillance.  In that exchange, the detective noted that the hotel "does have video surveillance," but that he did not review the footage and could not say whether Frasier and Oren "were . . . captured on it or not."[76]

This type of unsupported, conclusory allegation of deficient performance is insufficient to establish that Frasier's underlying claim of ineffective assistance of trial counsel has "some merit."  A general, unsupported claim that a trial attorney should have taken some action, without any basis for establishing that the attorney's acts or omissions prejudiced their client, simply cannot satisfy the *Martinez* exception to procedural default.

Frasier also argues that his attorney failed to bring out certain facts at trial during examination of Oren, "resulting in no record being established to support [his] version of events."[77]  This assertion is belied by the record, which shows that Oren's trial testimony indicated—contrary to her recorded statement—that she "was on drugs on the night" of June 29, 2018, that she could not remember what

---

[76]  *See* Trial Tr. 59:1-17.  Frasier alleges, without any evidence, that the investigating detective viewed the footage and "decided it was of no use to him."  Doc. 25 at 20.  This unfounded speculation is plainly contradicted by the detective's trial testimony.

[77]  Doc. 25 at 19.

had transpired that night, and that Frasier hit her in response to her "swinging at him first" (an assertion that Oren had never previously made).[78]  In his supplemental memorandum, Frasier concedes that Oren's trial testimony "supports [his] version of events."[79]  Additionally, Frasier testified at trial on his own behalf, providing his version of the June 29 incident.[80]  The mere fact that the trial judge, who was also the trier of fact, found Oren's prior recorded statement to be more credible than Oren's or Frasier's trial testimony does not implicate ineffective assistance by Frasier's attorney.  It also does not demonstrate that Frasier suffered any prejudice from his attorney's allegedly deficient performance.

      The Court thus concludes that Frasier's unsupported speculation regarding the contents of the hotel surveillance video fails to demonstrate any type of prejudice.  In other words, even if his trial attorney acted unreasonably by failing to obtain and review the video footage, Frasier has not established how he was prejudiced by this failure.  As such, he has not shown that his underlying ineffective-assistance-of-trial-counsel claim has "some merit," nor has he established that PCRA counsel was ineffective for not raising this claim during collateral review.  The *Martinez* exception therefore does not apply, so this claim is also procedurally defaulted and unreviewable.

---

[78]  *Frasier*, 2020 WL 1490937, at *1.
[79]  Doc. 25 at 24.
[80]  *Frasier*, 2020 WL 1490937, at *2.

### C.    Failure to Properly Defend Against Strangulation Charge

Frasier's third claim overlaps with his first.  He asserts that his trial counsel was constitutionally deficient because she "presented no defense to refute the alleged strangulation[.]"[81]  He argues that, because the only evidence of strangulation came from Oren's recorded statement, trial counsel was ineffective for failing to move to suppress that statement.[82]

This claim warrants little discussion.  First, as fully explained above, Frasier has not established that his ineffective-assistance claim regarding an evidentiary challenge to the admissibility of the recorded statement has merit.  Second, contrary to Frasier's assertion that the only inculpatory evidence of strangulation came from Oren's recorded statement, the prosecution introduced corroborating photographic evidence at trial depicting "bruising and redness around Oren's neck" immediately after the assault.[83]  Moreover, both the trial court and the Superior Court found sufficient evidence to support the strangulation charge.[84]

Frasier has simply failed to show that his trial counsel performed deficiently or that he was prejudiced in any way by this purportedly deficient performance. Consequently, Frasier has not established that his underlying ineffective-assistance-of-trial-counsel claim regarding the strangulation charge has some

---

[81]  Doc. 25 at 27.
[82]  *Id.* at 28, 29.
[83]  *Frasier*, 2020 WL 1490937, at *4.
[84]  *See id.*

merit, nor has he established that PCRA counsel was ineffective for not raising this meritless ineffective-assistance claim during collateral review. The *Martinez* exception, therefore, does not apply, so this claim too is procedurally defaulted and unreviewable.

### D.   Failure to Challenge Oren's "Ability to Remember"

Frasier's fourth claim is cursory and meritless. He asserts that trial counsel was ineffective for failing to investigate and challenge Oren's "memory during the audio statement."[85] He maintains that, during trial, Oren testified that "she didn't remember the statement occurring" and stated "in excess of 40-45 times that she didn't remember one thing or another."[86]

Rather than impugn the veracity or reliability of the recorded statement, Frasier's argument undercuts Oren's trial testimony and bolsters the credibility of her recorded statement. That statement was made less than two weeks after the incident and outside of Frasier's presence,[87] and it was contemporaneously recorded. Moreover, unlike Oren's trial testimony, it did not contain dozens of statements about her inability to remember details or events.

---

[85]  Doc. 25 at 30.

[86]  *Id.* Frasier also brings up Oren's drug addiction, (*see id.*), but he does not in any way establish (beyond pure speculation) how this issue would affect the reliability of her recorded statement.

[87]  *See* Trial Tr. 60:2-8 ("What [Oren] had indicated to [the investigating detective] was she was extremely scared of Mr. Frasier, that he has people as she put it and she felt that testifying against him could be dangerous for her and . . . she was legitimately scared of him."); *see also Frasier*, 2020 WL 1490937, at *2, 3 (noting that trial court found that "Oren was terrified of retaliation by Frasier").

Nothing in this portion of Frasier's initial or supplemental memorandum shows deficient performance or prejudice, and therefore he has failed to establish that the underlying ineffective-assistance-of-trial-counsel claim has some merit. Nor has Frasier established that PCRA counsel was deficient for failing to raise this meritless ineffective-assistance claim during initial collateral review. The *Martinez* exception does not apply, so this claim is procedurally defaulted and unreviewable as well.

### E.   Failure to Pause Trial and Claim Self-Defense

In his fifth ground for relief, Frasier contends that his trial attorney was ineffective for failing to ask for a recess to consult with him about presenting "self-defense as a basis for innocence" after Oren testified that she swung at him first.[88] Frasier posits that Oren's statement was "an unprovoked response to the prosecutor" and should have prompted trial counsel to stop the trial, confer with her client, and, ultimately, change course and argue self-defense.

This claim, too, is meritless. Frasier was convicted for attempted aggravated assault and strangulation. The sufficiency of the evidence supporting those convictions was affirmed on appeal. Under 18 PA. CONS. STAT. § 505, "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is *immediately necessary* for the purpose of *protecting himself* against

---

[88]   Doc. 25 at 31.

the use of unlawful force by such other person on the present occasion."[89]

Notably, the force used to repel "non-deadly force" must be "reasonable under the circumstances."[90]  As the Supreme Court of Pennsylvania has admonished, non-deadly force "may be met with force so long as it is only force enough to repel the attack."[91]

Frasier, who weighed 300 pounds,[92] was found to have strangled Oren and to have used force in an attempt to cause Oren "serious bodily injury."[93]  Meeting a "swing" from Oren with such force does not implicate self-defense.[94]  In no way could trial counsel be deemed ineffective for failing to raise a self-defense claim under the facts adduced at trial, as such a claim had practically no chance of success.

Thus, Frasier has failed to show either deficient performance or prejudice, so he cannot establish that the underlying ineffective-assistance-of-trial-counsel claim has some merit.  Nor has Frasier established that PCRA counsel was deficient for failing to raise this meritless ineffective-assistance claim during initial collateral review.  The *Martinez* exception, therefore, does not apply, so Frasier's fifth claim is procedurally defaulted and unreviewable as well.

---

[89]  18 PA. CONS. STAT. § 505(a) (emphasis added).
[90]  *Commonwealth v. Presogna*, 292 A.2d 476, 477 (Pa. Super. Ct. 1972); *see Commonwealth v. Witherspoon*, 730 A.2d 496, 499 (Pa. Super. Ct. 1999).
[91]  *Commonwealth v. Pollino*, 467 A.2d 1298, 1301 (Pa. 1983).
[92]  *Frasier*, 2020 WL 1490937, at *2.
[93]  18 PA. CONS. STAT. § 2702(a)(1).
[94]  *See Witherspoon*, 730 A.2d at 499.

### F.      Failure to Assert Trial Court Abuse of Discretion

In his sixth ineffective-assistance claim, Frasier maintains that his trial attorney was deficient for failing to argue that the trial court abused its discretion in finding the recorded statement more reliable than Oren's trial testimony. This claim is meritless for at least two reasons.

First, as fully explained above, Frasier has not established that there was any basis for a pretrial or mid-trial challenge to the admissibility of the recorded statement (an argument he once again raises). When Oren took the stand and testified in a manner that contradicted her prior recorded statement or indicated that she could not remember its contents, that statement became admissible as both impeachment and substantive evidence under the Pennsylvania Rules of Evidence.[95]

Second, Frasier's sub-arguments regarding the need for expert testimony and hearsay are wholly unpersuasive. Frasier contends that "Judge Lewis was not a voice expert qualified to determine the quality or sincerity" of Oren's voice and therefore should not have relied more on the recorded statement than on Oren's trial testimony.[96] But no expert testimony is required for the trier of fact to discern the credibility of a lay witness's inconsistent statements; that is one of the

---

[95]   *See* Pa. R. Evid. 613(a); Pa. R. Evid. 803.1(1)(C), Pa. R. Evid. 803.1(4)(C).
[96]   Doc. 25 at 32.

quintessential responsibilities of a factfinder in a criminal trial.[97]  Frasier also argues that his trial counsel was ineffective for not challenging the recorded statement as hearsay but—as fully explained above—that statement was explicitly excepted from the rule against hearsay under Pennsylvania Rules of Evidence 803.1(1)(C) and (4)(C).

Consequently, Frasier has failed to show either deficient performance or prejudice, so he cannot establish that the underlying ineffective-assistance-of-trial-counsel claim has some merit.  Nor has Frasier established that initial-review PCRA counsel was deficient for failing to raise this meritless ineffective-assistance claim during collateral review.  The *Martinez* exception does not apply, so Frasier's sixth claim is procedurally defaulted and unreviewable.

## G.    Failure to Allege Trial Court Bias

In Frasier's initial memorandum of law, he included a seventh ineffective-assistance claim that does not appear in his original Section 2254 petition or his supplemental memorandum.  In this ground for relief, Frasier maintains that his trial attorney was deficient for "failing to recognize and address the objective bias of Judge Lewis[.]"[98]

---

[97]  *See Commonwealth v. Williams*, 854 A.2d 440, 445 (Pa. 2004) ("In criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact.  The trier of fact is free to believe all, part, or none of the evidence." (citations omitted)).

[98]  Doc. 2 at 64.

At first blush, this claim appears to have been raised and litigated in state court.[99]  However, upon closer inspection, the grounds for recusal asserted in Frasier's initial memorandum of law are different than those that he argued in state court.[100]  Accordingly, this ineffective-assistance claim, like all the others, must be analyzed under *Martinez* because it was not fairly presented to the state courts or adjudicated on the merits.

Frasier contends that the way the trial court interpreted or described the evidence in its written Rule 1925(a) opinion[101] reflects "palpable" personal bias.[102] He quibbles with the trial court's phrasing and language, and again attempts to question the sufficiency and weight of the evidence and trial counsel's alleged failure to argue self-defense.  Yet nothing Frasier identifies in this claim comes close to demonstrating "bias, prejudice[,] or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially."[103]  Frasier may disagree with the trial court's wording or factual findings, but that disagreement does not establish that the trial court was biased or prejudiced against him.

This final ineffective-assistance claim, like the preceding claims, lacks even some merit.  And initial-review PCRA counsel was not ineffective for failing to

---

[99]   *See Frasier*, 2022 WL 367358, at *3-5 (resolving PCRA claim that trial counsel was ineffective for failing to seek recusal of trial court).

[100]  *Compare* Doc. 2 at 64-69, *with Frasier*, 2022 WL 367358, at *3-5.

[101]  *See* PA. R. APP. P. 1925(a).

[102]  Doc. 2 at 64-68.

[103]  *Frasier*, 2022 WL 367358, at *5 (quoting *Commonwealth v. Bonds*, 890 A.2d 414, 419 (Pa. Super. Ct. 2005) (alteration in original)).

raise it.  The *Martinez* exception does not apply, so Frasier's seventh and final

ineffective-assistance claim is procedurally defaulted and unreviewable.

### H.    Cumulative Prejudice

In his final ground for relief, Frasier asserts a cumulative prejudice claim

with respect to trial counsel's performance.[104]  This claim is more fully developed

in his initial memorandum of law[105] and, like his other claims, was procedurally

defaulted.[106]  To the extent that Frasier attempts to rely once again on the *Martinez*

exception, he has failed to establish that his cumulative prejudice claim has some

merit for the simple reason that, as he has not established *any* prejudice for the

individual ineffective-assistance claims, there is no prejudice to aggregate or

cumulate.[107]  In other words, even assuming for the sake of argument that certain

aspects of his trial counsel's conduct fell below the constitutional minimum,

Frasier has not demonstrated prejudice stemming from that conduct.  With no

---

[104]  *See* Doc. 2 at 81-86; Doc. 25 at 32-33.

[105]  *See* Doc. 2 at 81-86.

[106]  Claims of cumulative prejudice or cumulative error are standalone constitutional claims that must be raised in state court before they are asserted in a Section 2254 petition.  *See Collins*, 742 F.3d at 541, 543.

[107]  *Cf. United States v. Bailey-Snyder*, 923 F.3d 289, 296 (3d Cir. 2019) ("To reverse a conviction for cumulative error requires more than one error."); *see also United States v. House*, 684 F.3d 1173, 1210-11 (11th Cir. 2012) ("[W]here there is no error or only a single error, there can be no cumulative error[.]" (citation omitted)); *United States v. Herrera-Genao*, 419 F. App'x 288, 296 (3d Cir. 2011) (nonprecedential) ("Herrera-Genao complains only of the cumulative effect of the preceding claims; because we have found no error regarding those claims, Herrera-Genao's claim of cumulative error also fails."); *United States v. Narducci*, 18 F. Supp. 2d 481, 502 (E.D. Pa. 1997) ("As we have discussed, not one of [petitioner]'s ineffective assistance of counsel claims has merit.  Therefore, the cumulative effect of each non-error does not add up to ineffective assistance of counsel: zero plus zero is still zero.").

prejudice established for any individual claim, there can be no cumulative prejudice; "zero plus zero is still zero."[108]

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Frasier's unexhausted petition for a writ of habeas corpus under 28 U.S.C. § 2254.  The Court likewise declines to issue a certificate of appealability, as Frasier has failed to make a substantial showing of the denial of a constitutional right,[109] or that "jurists of reason would find it debatable" whether this Court's procedural ruling is correct.[110] An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[108]   *Narducci*, 18 F. Supp. 2d at 502.
[109]   28 U.S.C. § 2253(c)(2).
[110]   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).